Alan T. CALHOUN, as Executor of the Estate of Julian Calhoun, Deceased, Plaintiff,

v.

WASHINGTON INVESTORS PLANS, INC., Bankers Security Life Insurance Society, Empire State Mutual Life Insurance Company and the United States Life Insurance Company, Defendants.

Civ. A. No. 4927.

United States District Court
D. South Carolina,
Spartanburg Division.

April 26, 1967.

Harvey W. Johnson, and James B. Stephen, Spartanburg, S. C., for plaintiff.

Horace L. Bomar, Holcombe & Bomar, Spartanburg, S. C., for defendant, Washington Investors Plans, Inc.

Thomas B. Butler, Butler, Chapman & Parler, Spartanburg, S. C., for defendants, Bankers Security Life Insurance Society, Empire State Mutual Life Ins. Co. and United States Life Ins. Co.

## ORDER

MARTIN, Chief Judge.

This matter is before the Court upon motions for summary judgment submitted by all of the parties to this action. Each party has, therefore, certified to the Court that there is no genuine issue as to any material fact, and each feels he is entitled to judgment as a matter of law. Indeed, after reviewing the entire record, including proposed findings of fact on behalf of each party, there is no genuine material factual issue.

Although the contractual duties and relationships among the parties to this suit are intricate, the material facts creating this dispute are simple.

The defendant Washington Investors Plans, Inc. is a corporation which sponsors the sale of investment plans, primarily involving accumulation of mutual fund shares. It offers two types of investment plans: (1) Systematic Accumulation Plan with Insurance, and (2) Systematic Accumulation Plan without Insurance.

American Plans Distributors, Inc. is the national distributor for the sale of the investment plans.

Chemical Corn Exchange Bank is, by an agreement dated September 17, 1958, the custodian of the assets, performs accounting duties, and communicates with shareholders with respect to certain phases of the investment program.

Washington Investors arranged with the United States Life Insurance Company, the Empire State Mutual Life Insurance Company, and Bankers Security Life Insurance Company, to issue group life insurance policies to individuals who apply for insured plans and are accepted by the insurance companies for such insurance.

By an application form dated September 16, 1959, accompanied by a $500.00 check, Julian Calhoun applied for a plan with insurance or if rejected for a plan without insurance, providing for monthly payments of $500.00. The required minimum initial payment was $1500.00 and the distributor, therefore, returned the application. On September 22, 1959, Calhoun mailed the application again, this time with a check in the proper amount of $1500.00. On September 24, 1959, the distributor received the application, prepared the usual GR–19 Form, mailed a copy of the form to the United States Life Insurance Company, and also a copy was forwarded to the Custodian Bank. These copies were received by the Insurance Company and the Custodian Bank on Friday, September 25, 1959. The GR–19 Form revealed that Calhoun had applied for a $30,000.00 plan and that one Floyd J. Zing had applied for a $3,000.00 plan.

These applications were considered by the Insurance Company on Monday, September 28, 1959, when Mr. James McGovern from the Group Division,

stamped opposite Calhoun's name the words "Pending—Letter Follows," which indicated Calhoun's application had not been accepted. No notation was placed opposite Zing's name, which indicated he had been accepted for insurance. Mr. McGovern signed the form and mailed it to the Custodian Bank.

Also on September 28, 1959, the Insurance Company mailed Form GR–20 to the distributor, and a copy thereof to the Custodian Bank. This form indicated that Julian Calhoun was "not acceptable for insurance." On the morning of September 29, 1959, the Custodian Bank received the GR–19 and GR–20 Forms.

However, on the same day, September 29, 1959, through error, the Custodian Bank mailed to Julian Calhoun the "Statement of Insurance" and the "Systematic Accumulation Plan with Insurance" forms. A bookkeeping entry was made by the Bank indicating that $51.30 was charged to Calhoun's account toward an insurance premium, and a confirmation slip was mailed to him, reflecting that said sum had been allocated to an insurance premium and the balance to the purchase of Mutual Fund Shares, after deduction of other handling fees.

Shortly thereafter the mistake was discovered and on October 6, 1959, Mr. Canino of the Custodian Bank telephoned Mr. Alan Calhoun, Julian's son, and informed him that the Insurance Companies had declined to accept his father for insurance, that the plan was issued in error, and that under the provisions of the original application, Julian would have a non-insured plan. Julian was then on vacation, but was advised of the situation upon his return home.

On October 15, 1959, Mr. Canino, of the Custodian Bank, sent a registered letter to Julian Calhoun informing him that his application for a plan with insurance had been rejected, and enclosed a Systematic Accumulation Plan without Insurance, Plan No. 200–615. The letter also stated that the $51.30 previously allocated to an insurance premium had been used to purchase 4.990 additional shares of the Mutual Fund.

Until Julian's death on August 9, 1964, he made his regular monthly payments which the Custodian Bank applied to the purchase of Mutual Fund Shares. The Custodian Bank later refused to accept Julian's $500.00 tender submitted as the initial payment on a second five year term plan with insurance.

The crucial issue, at this state, is whether, under these circumstances, Julian Calhoun was covered by the group policy.

■ The plaintiff argues that the Court should not make this inquiry since application of the New York incontestability statute prevents the insurer from denying the policy's validity. However the defendants do not attack the validity of the group policy itself, but argues that Calhoun was never covered by the admittedly valid group policy since he was never accepted by the Insurance Companies for insurance, and thus never became a member of the group as defined by the insurance contract itself. Therefore, as held in Fisher v. United States Life Ins. Co., 249 F.2d 879 (4th Cir. 1957), the incontestability statute does not apply to bar this type of a coverage defense. The plaintiff relies heavily on the case of Eagon v. Union Labor Life Ins. Co., 3 N.Y.2d 785, 164 N.Y.S.2d 37, 143 N.E.2d 793 (Ct.App.1957). This Court does not find *Eagon* to be controlling in this case for the same reasons set forth in the *Fisher* case, supra at 249 F.2d pp. 883, 884.

■ Calhoun applied for an investment plan with insurance, and in the alternative for a plan without insurance if rejected for insurance. He was in fact rejected. He was erroneously issued certificates indicating coverage under the master group policy. Whether the Custodian Bank was acting as agent for the Insurance Companies is immaterial. Even assuming an agency relationship existed, the mistake was soon discovered, corrected, and Calhoun was notified. Calhoun was not wrongfully deceived by the error, was not thereby unduly penalized, and there is no claim that he relied upon

the error to his detriment. This suit is an attempt to capitalize upon the possession of documents obtained through a legitimate clerical error promptly corrected before any detrimental reliance thereon had occurred. This Court will not require the Insurance Companies to pay for a risk they did not assume; it will not require Washington Investors to pay when no wrong resulting in damage occurred; nor will the Court allow the plaintiff to profit through innocent and promptly amended inadvertence. Accordingly,

It is ordered that the motions for summary judgment of all of the defendants be granted, plaintiff's motion for summary judgment be denied and judgment be entered in favor of the defendants.