**UNION INSURANCE EXCHANGE, IN-CORPORATED,** Attorney-in-Fact for Union Automobile Indemnity Association, an Inter-Insurance Exchange, Plaintiff-Appellee,

v.

Richard J. GAUL, Charles Gonzales, Clifford Peterson, John Gonzales and Marvin Peterson, Defendants-Appellants.

No. 16291.

United States Court of Appeals
Seventh Circuit.

March 21, 1968.

Harold C. Hector, Hammond, Ind., George J. Anos, Chicago, Ill., Richard F. Benne, Hammond, Ind., Edmund W. Lord, Chicago, Ill., for appellants.

John E. Leeney, Timothy P. Galvin, Jr., Hammond, Ind., for appellee.

Before CASTLE, SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In this diversity action, governed by Indiana law, the plaintiff Insurer sought to rescind a family automobile policy that it had issued to Richard J. Gaul of Crown Point, Indiana.

On September 4, 1963, Gaul appeared at the Cedar Lake, Indiana, office of Richard C. Gross, an insurance agent for plaintiff, in order to obtain automobile insurance. Gaul answered three vital questions in a box on plaintiff's application form as follows:

|  | "Yes | No |
|---|---|---|
| "Has any insurer ever cancelled or refused any auto insurance to applicant or any driver? 1948 Accident—Only loss | X | |
| "Has any drivers license of applicant or any driver ever been suspended, revoked, or refused? | | X |
| "Has applicant or any driver been convicted or forfeited bail for any moving traffic violation in past three years?" | | X |

These answers were false.

Gaul's unsigned application was then forwarded to plaintiff's home office in Bloomington, Illinois. On September 6, 1963, plaintiff's underwriter, Francis E. Brown, decided that Gaul was not an appropriate risk because an A.B.C. Service Bureau confidential card attached to

Gaul's application by one of plaintiff's clerical employees showed Brown that a 1961 policy issued to Gaul by another insurer had been cancelled shortly after its issuance. Brown wrote Gross on September 9, 1963, that plaintiff could not accept Gaul's application because the risk did not comply with its underwriting requirements. On September 10, Gross wrote Gaul that the plaintiff refused to write the requested insurance because Gaul's "insurance was cancelled in 1961."

On September 23, Gross telephoned Frederick Backsmeier, one of plaintiff's underwriters, requesting reconsideration of Gaul's application. Backsmeier was told by Gross that he had no adverse information about Gaul. Backsmeier requested Gross to resubmit the Gaul application and stated that an inspection would be made of the risk. Backsmeier then employed Jasper's Reports, Inc. to make a neighborhood investigation of Gaul. That organization uncovered no information to contradict the information given in Gaul's application.

Backsmeier received the favorable Jasper's report on October 31, 1963, and on the following day caused a policy of insurance to issue to Gaul, with an effective date of September 23, 1963. Gross delivered the policy to Gaul on November 4, 1963, and collected the premium.

On Gaul's October 4, 1963, return from a trip to California, he told Gross that he thought his 1961 policy had been cancelled because of too many accidents, that Herb Johnson of Lowell, Indiana, was the agent for the cancelling company, and that Gross could obtain the cancellation information from Johnson. Gross did not call Johnson and did not report this conversation to plaintiff.

On August 29, 1964, Gaul was driving the automobile covered by plaintiff's family automobile policy and collided with bicycles being ridden by defendants Charles Gonzales and Clifford Peterson, minor sons of defendants John Gonzales and Marvin Peterson, causing serious bodily injury to the boys.[1]

After this accident, plaintiff first learned that the second and third application questions (quoted supra, p. 152), had also been falsely answered by Gaul. Thus it was discovered that his driver's license had been suspended from January 17, 1958, to July 17, 1958, and that he had been convicted of at least one moving traffic violation after September 4, 1960.

After a bench trial the District Court found that the plaintiff relied upon these two false answers in Gaul's application[2] and would not have otherwise issued the policy. The Court further found that on October 22, 1964, the plaintiff disclaimed the contract and unsuccessfully tendered back the premium to Gaul. In its conclusions of law, the Court stated:

> "Plaintiff, aside from the knowledge of the 1961 cancellation was entitled to make any investigation it believed appropriate and in doing so was bound only by whatever information it discovered and it could continue to rely upon information on the application not known to be false, which was not contradicted by the investigation."

Although the District Judge expressed some reservations, judgment was entered rescinding the policy and relieving plaintiff of all liability thereunder. Defendants' motion for a new trial was denied after a hearing.

To support reversal, defendants urge that plaintiff did not rely upon Gaul's application when it issued the policy on November 1, 1963. The District Court found to the contrary and its finding is supported by underwriter Backsmeier's uncontroverted testimony that he did consider the answers in Gaul's application before issuing the policy. The ap-

---

1. Defendants' principal brief states that the boys have filed suit against Gaul to recover damages for his alleged negligence.

2. The Court found it unnecessary to pass upon plaintiff's alternative theory that it was entitled to rescission because of the false statement in the policy declaration that Gaul's driving license had never been suspended. Our opinion encompasses both theories.

plication itself is stamped as having been again received by plaintiff on September 25, 1963, and it was reprocessed until cleared on November 1, 1963. We agree with Insurer that this family automobile policy was issued on the mistaken understanding that Gaul's driver's license had never been suspended and that he had not been convicted for any moving traffic violation within the three years preceding his application.

■ The next question for resolution is whether the Insurer is estopped from rescinding this policy because it possessed facts that would have put a prudent insurer on further inquiry that would have disclosed the falsity of the two critical answers. Rescission or forfeiture is a drastic remedy and courts are ordinarily reluctant to grant it. Hostility to such relief was expressed by the Supreme Court in Knights of Pythias v. Kalinski, 163 U.S. 289, 298, 16 S.Ct. 1047, 1051, 41 L.Ed. 163:

> "If the company ought to have known of the facts, or with proper attention to its business, would have been apprised of them, it has no right to set up its ignorance as an excuse [in order to secure forfeiture]."

In this field knowledge includes constructive knowledge, so that rescission was unjustified here if plaintiff possessed sufficient facts to require it to make a further investigation.

■ The District Court's finding is unchallenged that on October 4, 1963, Gaul advised plaintiff's agent, Gross, that Gaul's prior automobile insurance had been cancelled in 1961 "because of too many accidents." Gaul told Gross that he could obtain the 1961 information from Herb Johnson, an insurance agent in Lowell, Indiana. Gross did not call Johnson and did not report this information to plaintiff. Despite his failure so to advise plaintiff, Gross' knowledge was imputable to it. General Accident Fire and Life Assurance Corp. v. Browne, 217 F.2d 418, 423 (7th Cir. 1954); Prudential Insurance Co. of America v. Bidwell,

103 Ind.App. 386, 8 N.E.2d 123, 127 (1937).

■ Besides having imputed knowledge of Gaul's 1961 insurance cancellation for "too many accidents," plaintiff knew that Gaul's insurance had also been cancelled in 1948 because of an accident resulting in a loss to his then insurer. The fact that his automobile insurance had been cancelled in 1948 and in 1961 was a red flag that his driving record was probably bad. From the A.B.C. Service card clipped to Gaul's application by one of its clerks, plaintiff knew the name of the company that had cancelled Gaul's insurance in 1961, and that Commercial Service, Inc., of Indianapolis, Indiana, was in possession of the facts underlying the 1961 cancellation. The plaintiff also knew that Gaul had lied about having only a 1948 insurance cancellation. Surely if he would lie about that question on the insurance application, he would not hesitate to lie about other questions such as the two involved here. Therefore, the Insurer could no longer assume, as it was entitled to assume at the outset, that Gaul was honest.

■ Being chargeable with knowledge that Gaul's 1961 cancellation was for "too many accidents" and knowing that his 1948 cancellation was also because of an accident, plaintiff was minimally required to check Gaul's record on file with the Indiana Bureau of Motor Vehicles. Plaintiff admitted that it was accustomed to make such a check if, as here, it knew of an applicant's past accidents. By sending a nominal fee to the Indiana Bureau, plaintiff would have discovered (as shown by one of the joint exhibits) that Gaul's license had been suspended from January 17, 1958 to July 17, 1958, and that he had at least one moving traffic violation within three years of his application. Nor would it have been unduly burdensome for plaintiff to check with the company that had cancelled Gaul's insurance in 1961, with Commercial Service, Inc., or with Lowell, Indiana, insurance agent Herb Johnson with respect to

the 1961 cancellation. Instead of doing so, plaintiff only had Jasper's Reports, Inc. make a neighborhood survey. This was inappropriate in view of plaintiff's knowledge that the 1961 cancellation was due to "too many accidents," almost certainly indicating a poor driving record.

■ As explained in Columbian National Life Insurance Co. of Boston, Mass. v. Rodgers, 116 F.2d 705 (10th Cir. 1940), certiorari denied, 313 U.S. 561, 61 S.Ct. 838, 85 L.Ed. 1521, an insurance company is chargeable with knowledge of facts which it ought to have known. As the court there explained (at p. 707):

> "Knowledge which is sufficient to lead a prudent person to inquire about the matter, when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed, and will be regarded as knowledge of the facts."

■ Here we hold that this Insurer and its agent had sufficient information in their possession to awaken further inquiry. Indiana recognizes such a duty. As stated in Travelers Insurance Co. v. Eviston, 110 Ind.App. 143, 37 N.E.2d 310, 316 (1941):

> "The rule that whatever puts a person on inquiry amounts, in law, to notice of such facts as an inquiry pursued with ordinary diligence and understanding would have disclosed, is applicable to charge an insurer with notice. This is in line with the general rule * * * that the principal is charged with the knowledge of that which his agent, by ordinary care, could have known, where the agent has received sufficient information to awaken inquiry."

If "proper inquiry" had been made,[3] plaintiff would have learned of the falsity of Gaul's representations as to his driver's license and moving traffic violations. Since the plaintiff is charged with notice of what that inquiry would have disclosed, it is estopped from asserting Gaul's false statements as ground for cancelling the policy. Apperson v. United States Fidelity and Guaranty Co., 318 F. 2d 438, 441 (5th Cir. 1963). In the Apperson case, the insured's reaffirmance of his misrepresentations made it unnecessary to decide whether the facts previously disclosed to the insurer would have put a prudent person on further inquiry,[4] but here the facts already in Insurer's and its agent's possession required it to make a further investigation. Cf. Provident Life & Accident Insurance Co. v. Hawley, 123 F.2d 479, 483 (4th Cir. 1941); Gallagher v. New England Mutual Life Insurance Co. of Boston, 19 N.J. 14, 114 A.2d 857, 862 (1955); Bailey v. American Marine & General Insurance Co., 249 La. 98, 185 So.2d 214, 217 (1966); Johnson v. Life Insurance Co. of Georgia, 52 So.2d 813, 815–816 (Fla. 1951); 29 Am.Jur. Insurance § 706, p. 967. The issuance of the policy without making such inquiry waived the misrepresentations in the second and third answers in the box of the application. 7 Couch on Insurance 2d, §§ 35:252, 35:-254; 16 Appleman, Insurance Law and Practice, § 9086, pp. 618–619.

Since we conclude that the Insurer did not have the right to rely upon Gaul's false representations when this policy issued, the judgment of rescission must be reversed.

3. See Mishawaka, St. Joseph Loan & Trust Co. v. Neu, 209 Ind. 433, 196 N.E. 85, 89 (1935), and 39 Am.Jur. Notice and Notices, § 12, p. 238 and cases cited.

4. Plaintiff also relies on Franklin Life Insurance Company v. Bieniek, 312 F.2d 365, 95 A.L.R.2d 407 (3d Cir. 1962); Adriaenssens v. Allstate Insurance Company, 258 F.2d 888 (10th Cir. 1958); and Provident Life & Accident Insurance Co. v. Hawley, 123 F.2d 479 (4th Cir. 1941). But in those cases, the insurers did not have sufficient adverse information as to the insured to compel a further inquiry.