GOVERNMENT EMPLOYEES INSUR-
ANCE COMPANY, Appellant,

v.

Gary GOVAN, Viola Morse, Maria L.
Wiggins and Larry Wiggins,
Appellees.

No. 81–899.

District of Columbia Court of Appeals.

Argued May 19, 1982.
Decided Oct. 7, 1982.

Frank J. Martell, Washington, D.C., for appellant.

Edward S. Horowitz, Greenbelt, Md., for appellees.

Before KELLY, FERREN and BELSON, Associate Judges.

FERREN, Associate Judge:

Government Employees Insurance Company (GEICO) appeals from the trial court's judgment that the terms of an insurance policy obligated GEICO to defend appellee Viola Morse in an action resulting from a September 16, 1978 incident involving her automobile, driven by her son, and to indemnify Morse against loss. We affirm.

---

## I.

Morse obtained an automobile insurance policy from GEICO on September 14, 1966 and renewed it every year through 1978. The policy required GEICO to pay any sum which Morse became legally obligated to pay for bodily injury or property damage arising out of the use of an automobile, and to defend Morse in any suit for damages payable under the policy. The policy covered a 1975 Chevrolet, with Morse listed as the 100% driver. On May 16, 1978, Morse added to the policy her adult son, appellee Gary Govan, as 100% driver of a second car, a 1971 Plymouth.

On July 11, 1978, Morse filled out and returned to GEICO an "Automobile Insurance Questionnaire." Part "C" of the questionnaire instructed policyholders to "describe each conviction, license suspension or revocation, bail forfeiture or fines for driving violations or citations (other than parking) in the past three years by any operator of your auto." Morse checked the box labeled "IF NONE, CHECK HERE." In fact, however, Morse had received a traffic citation for failing to yield the right of way during a lane change (thereby causing a collision) on May 12, 1977. Also during the three-year period, Govan had been convicted of four traffic offenses, including reckless driving and negligent driving. His Maryland driver's license had been suspended twice, and his District of Columbia driver's license had been revoked.

On September 16, 1978, Govan drove Morse's Chevrolet—with her consent—to the home of a friend, Victoria Holland. There, Govan met two of his acquaintances, appellees Maria and Larry Wiggins. Govan and the Wigginses left Holland's house at the same time and had an argument outside. Govan walked to a nearby parking lot where he had left the Chevrolet. The Wigginses stood next to their car, talking, and as Govan's car turned out of the parking lot it swerved and hit their car. Neighbors heard the crash and investigated. They found Maria Wiggins lying near the cars (she suffered a dislocated hip, a broken ankle, and a broken jaw), and saw Govan, who was holding a bottle, fighting with Larry Wiggins.

Govan was indicted for assault with a dangerous weapon (automobile) upon Maria and Larry Wiggins with intent to kill them, and for assault with a dangerous weapon (bottle) upon Larry Wiggins with intent to kill him. Pursuant to a plea agreement, Govan entered an *Alford*[1] plea to the charge of assaulting Larry Wiggins with a bottle, and the other charges were dropped. GEICO brought this suit for declaratory judgment, seeking a determination that it was not obligated to defend Morse in actions stemming from Govan's use of her car on September 16, 1978, or to indemnify Morse against any loss. The trial court ruled, however, that GEICO must defend and indemnify Morse. GEICO appeals from that judgment.

## II.

■ GEICO contends the trial court erred in rejecting its assertion that Morse's insurance policy was void *ab initio* because Morse incorrectly indicated on the questionnaire that neither she nor Govan had committed any traffic violation in the past three years. GEICO argues, specifically, that Morse's check mark constituted a "material misrepresentation in an application for insurance," that GEICO relied on her representation in renewing the policy, and that GEICO accordingly was entitled to rescind the policy. *See, e.g., State Farm Mutual Automobile Insurance Company v. Price,* Ind.App., 396 N.E.2d 134 (1979).

We conclude that GEICO failed to establish that it had renewed Morse's insurance policy in reliance on her questionnaire answer; thus, the misrepresentation defense fails.[2] Despite the testimony of GEICO's

---

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

2. Given our ruling on this issue, we need not decide whether an insurer may rescind, as of the renewal date, a policy renewed in reliance on a misstatement (intentional or unintentional) in a questionnaire, or whether the insurer instead is limited to the remedy of canceling

representative that the company would not have renewed Morse's policy had she answered the question correctly, the record shows that GEICO, at the time of the 1978 renewal, had actual knowledge that Morse's representation of her own driving record was false. GEICO's file on Morse—which an underwriter reviewed along with the 1978 questionnaire—contained her 1977 "Automobile Insurance Questionnaire," on which Morse indicated that she had received an "Article 66½" citation in connection with the May 12, 1977 accident involving her car. A GEICO employee had noted on the questionnaire that an Article 66½ violation was "failure to yield." Morse's file also contained an "Underwriting Claim Review" dated May 3, 1978, regarding the May 12, 1977 accident. The underwriter stated in the review that Morse had been "charged by Police for [a] traffic violation" because she "wasn't in [her] lane." In addition, GEICO's file on Morse contained a record of the fact that in 1967, eleven years before the questionnaire at issue here, the company had rejected Morse's request to add Govan to the policy because of his poor driving record.

Since GEICO knew the truth concerning Morse's record—and even had renewed the policy in 1977 with knowledge of her citations—GEICO cannot claim that it "relied" for the 1978 renewal on Morse's assertion that she had committed no violation. *See Union Insurance Exchange, Inc. v. Gaul,* 393 F.2d 151, 154–55 (7th Cir.1968) (applying Indiana law); *State Farm Fire and Casualty Co. v. Sevier,* 272 Or. 278, 287, 537 P.2d 88, 93–94 (1975) (en banc). To the contrary, in fact, GEICO's knowledge that Morse had misstated her own record put the company on "inquiry notice," *Price, supra* at 137, that, as a matter of "reasonable prudence," *id.,* it must inquire into the other part of her answer to the "violations" question, namely Govan's driving record. *See Gaul, supra* at 154–55.[3] A reasonable inquiry—*e.g.,* a Department of Motor Vehi-

cles check—would have revealed Govan's true driving record. *See id.* at 154. GEICO, therefore, is chargeable with knowledge of that record. *Compare id.* at 155 ("this Insurer and its agent had sufficient information in their possession to awaken further inquiry") *with Price, supra* at 136–37 (although "insurance company has no right to rescind a policy where it had knowledge of the facts or where it has sufficient information which would cause a reasonably prudent man to inquire further, . . . State Farm had no notice that the information obtained from [the insured] was false") *and Fireman's Fund Insurance Co. v. Knutsen,* 132 Vt. 383, 392, 324 A.2d 223, 230 (1974) (same). *See also Haubner v. Aetna Life Insurance Co.,* D.C.App., 256 A.2d 414, 416–17 (1969) (where life policy insurer knew insured's statement that excised tumor had been benign was false, insurer would have waived defense of misrepresentation had insured not made other false statements which insurer had no basis, from the insured's statement or other evidence of record, to investigate).

To hold GEICO to a less stringent duty of inquiry on the record here would permit this carrier—and others—to renounce with relative ease the protections the public has a right to expect from contract relationships between automobile carriers and insureds. Thus, given the duty to investigate attributable to information contained in its own records, GEICO failed to show that it relied on Morse's misstatement. The trial court, therefore, correctly determined that GEICO was not entitled to rescind the policy.

### III.

◼ GEICO also contends the trial court erred in concluding that GEICO must afford coverage to Morse under the policy, even though Govan had acted intentionally to injure the Wigginses. Specifically, GEICO points out that, by its terms, the policy does not apply "to bodily injury or property

the policy after 30 days' notice. *See* 33 D.C. R.R. §§ 1160.2(a)(4), 1160.3, 1160.5 (1980).

3. That duty of inquiry is all the more compelling given evidence in the same GEICO file that at one time it had declined coverage to Govan.

damage caused intentionally by or at the direction of the insured."

We agree with the trial court, however, that, while GEICO may refuse coverage to Govan for his own intentional acts, it must offer coverage to Morse since Govan did not act "at the direction" of Morse. "We think the parties intended the qualifying clause to mean 'unless committed by or at the direction of the insured *seeking coverage.*'" *Esmond v. Liscio,* 209 Pa.Super. 200, 211, 224 A.2d 793, 798–99 (1966) (emphasis in original); *see Nassau Insurance Co. v. Mel Jo-Jo Cab Corp.,* 78 A.D.2d 549, 432 N.Y. S.2d 29, 30 (1980).

In sum, the trial court did not err in ruling that GEICO was obligated to indemnify Morse against loss and to defend her in any action filed as a result of Govan's use of her automobile on September 16, 1978.

*Affirmed.*