Lelia Grace FISHER, Appellant,

v.

The UNITED STATES LIFE INSURANCE COMPANY IN CITY OF NEW YORK, a body corporate, Appellee.

No. 7400.

United States Court of Appeals Fourth Circuit.

Argued Oct. 9, 1957.

Decided Nov. 8, 1957.

W. Giles Parker and Wylie L. Ritchey, Baltimore, Md., for appellant.

William B. Kempton, Baltimore, Md. (Robert E. Coughlan, Jr., Baltimore, Md., and Saul Lesser, New York City, on brief), for appellee.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

This is a suit upon a group life insurance policy. In accordance with the well considered views expressed in a written opinion, judgment was entered for the defendant upon a verdict of a jury which found that the plaintiff's decedent was not an employee of a named employer within the meaning of the insuring

clauses of the policy. Fisher v. United States Life Insurance Company in the City of New York, D.C., 145 F.Supp. 646. The beneficiary, by this appeal, asserts that the defense is unavailable under the terms of the incontestable clause and that her motion for judgment *non obstante veredicto* should have been granted.

The defendant insurance company issued its group life insurance policy in New York to the Trustees of the Oil Heat Institute of America, Distribution Division, Insurance Trust Fund, as the assured, for the benefit of employees of those heating oil dealers and distributors who chose to participate. One of the participating employers was Herman H. Fisher, Inc., of Baltimore, Maryland. The plaintiff's decedent was the founder and the president of that company.

The policy provided life insurance for certain executive, administrative and supervisory employees, individual proprietors or partners, and provided that each employee within the defined classes, actively at work with a contributing employer on the effective date of the policy, should become insured as of that date, while each employee subsequently becoming eligible should become insured as of the date of his subsequent eligibility. The policy then specifically provided that if any employee is not regularly performing the duties of his occupation on the date he would otherwise become insured under the policy, the effective date of the insurance of such employee shall be deferred until his return to active duty. The insurance as to any employee was to terminate automatically thirty-one days after termination of his employment, and cessation of active work in a class of eligible employees was, by definition, a termination of employment, except that an employee temporarily on part-time employment, or absent because of sickness or injury, was considered to be continuously employed so long as premiums were paid.

The policy provided that all premiums should be paid by the assured trustees and they should be non-contributory in the sense that no employee should make a contribution to the premium cost.

No individual applications or medical examinations were required. Each contributing employer sent to the trustees a list of his eligible employees together with funds to cover the premium cost of such insurance. These lists of eligible employees, together with the premium payments, were then delivered by the trustees to the insurance company. Under the terms of the insurance policy, the effectuation of the insurance was then automatic as to all eligible employees for whom the premium payment had been made. Indeed, the policy specifically provided that "The insurance shall not be invalidated by the Assured's failure due to clerical error, to give proper notice to the Company that an employee has become insured under this policy." However, the policy provided that the insurance company would issue to the assured for delivery to each insured employee a certificate setting forth a summary of the provisions of the insurance policy, specifying the face amount of the insurance and recording the designated beneficiary.

The pertinent provisions of the policy, summarized above, are set forth in full in the margin.[1]

1. "Employees Eligible
"Definition: The term 'employee' as used in this policy shall mean all actively employed officers, executives, division and department heads including individual proprietors and partners actively employed in their occupation provided that such employee's annual earnings from the contributing employer or as proprietor or partner are not less than $5,000.00.
"Each employee as defined above active-ly at work with a contributing employer on the effective date of the policy shall be eligible for insurance hereunder on such effective date; each employee not eligible on the effective date of the policy shall become eligible hereunder on the date he becomes actively employed with a contributing employer; *provided, however, that the following classes of employees are excluded from insurance under this policy:*

Prior to the effective date of the insurance policy, Herman H. Fisher, the President of Herman H. Fisher, Inc., had suffered a cerebral embolism resulting in paralysis, and he had other mental and physical ailments. Until his death, some two and a half years after the issuance of the insurance policy, he was

"Employees of an employer who has only one employee as defined herein.

\* \* \* \* \*

"Effective Date Of An Employee's
Insurance

"Each employee becoming eligible as of the effective date of this policy shall become insured as of that date. Each employee becoming eligible after the effective date of this policy shall become insured as of the date of his eligibility; provided, however, that in any instance when an employee is not regularly performing the duties of his occupation on the date he would become insured in accordance with the terms of this paragraph, the effective date of such employees insurance shall be deferred until his return to active duty. The insurance shall not be invalidated by the Assured's failure due to clerical error, to give proper notice to the Company that an employee has become insured under this policy.

"This policy provides insurance on the non-contributory basis. Non-contributory insurance is insurance for which an employee does not contribute toward the cost.

"Termination Of Employee's
Insurance

"The insurance of an employee shall automatically terminate at the earliest time indicated below except as may be hereinafter provided:

"(a) Thirty-one days after termination of employment. Cessation of active work in the classes of employees eligible for insurance shall be deemed termination of employment, except that while an employee is temporarily on part-time employment or is absent on account of sickness or injury, employment shall be deemed to continue until premium payments for such employee's insurance are discontinued. The insurance of an employee who is absent from active work because of temporary lay-off, leave-of-absence, or temporary work stoppage, may be continued by the Assured upon a plan precluding individual selection, but not beyond the expiration of a period of thirty-one days following the policy month in which such temporary lay-off, leave-of-absence, or temporary work stoppage commenced.

"(b) For non-payment of premiums by the Assured on behalf of an employee in which event such insurance shall automatically terminate at the end of the period for which premium has been paid.

"(c) Upon termination of this policy except as may be provided under 'Conversion Privilege' hereof.

\* \* \* \* \*

"Certificates

"The Company will issue to the Assured, for delivery to each insured employee, a certificate setting forth a summary of the essential features of the insurance coverage to which the employee is entitled and to whom the benefits are payable.

\* \* \* \* \*

"Clerical error in keeping the records shall not invalidate insurance otherwise validly in force nor continue insurance otherwise validly terminated, but upon discovery of such error an equitable adjustment of premiums shall be made.

\* \* \* \* \*

"The Contract

"This policy, the application of the Assured attached hereto, and the individual applications, if any, of the employees, constitute the entire contract between the parties hereto. All statements made by the Assured, or by the individuals insured, shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid the insurance, or be used in defense of a claim under it, unless it is contained in a written application.

"The rights of the Assured or of any insured employee or of any beneficiary under this policy shall not be affected by any provision other than one contained in this policy or in the copy of the Assured's application attached hereto or in the individual application of an insured employee.

"No agent is authorized to alter or amend this policy, to accept premiums in arrears or to extend the due date of any premium, to waive any notice or proof of claim required by this policy, or to extend the date before which any such notice or proof must be submitted. No change in this policy shall be valid unless approved by the Company and evidenced by endorsement hereon, or by amendment hereto signed by the Assured and by the Company.

"Incontestability

"This policy shall be incontestable after one year from the date of issue except for non-payment of premiums."

receiving total and permanent disability payments under other insurance, and the jury has found that neither on the effective date of this insurance policy nor thereafter was he "regularly performing the duties of his occupation," within the meaning of that provision of the policy which fixes the effective date of an employee's insurance. Nonetheless, his name was included on the list of eligible employees of Herman H. Fisher, Inc., and the insurance company issued its certificate in his name, upon which some of the provisions of the policy were summarized while others were quoted in full, the amount of the insurance was specified and the plaintiff was named as beneficiary. In the certificate, the company's certification that Mr. Fisher, an employee, is insured under the terms of the master policy, that it would pay the face amount to the plaintiff upon his death, and that the insurance was effective as of October 1, 1952, is qualified by the words "(Provided employee is then regularly performing the duties of his occupation)."

Our consideration of this case is not complicated by any fact or circumstance which would warrant any claim of waiver or of estoppel. The single question presented is whether or not the incontestable clause bars the defense that the plaintiff's decedent, under the applicable terms of the insurance policy, had never become insured.

■ As the District Judge clearly pointed out in his opinion, it is well settled in general, and in New York whose laws govern our decision in this case, in particular, that the incontestable clause, after the passage of the stipulated period, proscribes defenses which go to the validity of the policy whether because of noncompliance with conditions or the falsity of representations or warranties. It was never intended to enlarge the coverage of the policy, to compel an insurance company to insure lives it never intended to cover or to accept risks or hazards clearly excluded by the terms of the policy. As then Chief Judge Cardozo, speaking for the New York

Court of Appeals in Metropolitan Life Insurance Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, said:

"The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. * * * With such a clause the death of the insured, coupled with the payment of the premiums, will sustain a recovery in the face of a forfeiting condition. It is quite another thing to say that the same facts will prevail against a refusal to assume the risk."

See also the opinion of Judge Chesnut, speaking for this Court, in Equitable Life Assurance Society of the U. S. v. Deem, 4 Cir., 91 F.2d 569.

The defense here is not that Mr. Fisher was not in good health on the date the group policy was issued or, indeed, that any condition or representation has been violated. The defense is simply that it is the clear intendment of the policy that all employees, within the definition of the policy, of each participating employer, were to be insured provided only the requisite premium payments were made, while persons not so employed are not within the coverage of the policy. Clearly it was the intention of the parties to the master policy to provide insurance for the benefit of people actively employed by participating employers, but, as clearly, the limitations they provided foreclose any assumption that it was intended that other persons might be covered by the insurance or that a particular employer, on a selected basis, might extend the insurance to a stranger to the defined class merely by reporting his name to the trustees and remitting the requisite premium.

The provision of the policy, expressly extending the insurance for the protection of an employee even though his name by clerical error had never been reported to the insurance company, emphasizes the fact that, subject only to the payment of the requisite premiums, the insurance was intended to extend to all members of a defined class, but to no one who was not a member of the insured class.

■ The individual certificates issued by the insurance company are not a part of the contract, which is contained entirely in the application of the trustees and in the group insurance policy issued to them. The certificates contain no insuring clauses or undertakings beyond the provisions of the contract and the plaintiff's case cannot be founded upon the issuance of a certificate in the name of Mr. Fisher. See Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732. The incontestable clause contained in the policy, itself, not in the certificate, must be construed, therefore, to prohibit any defense which would deny, in effect, the validity or effectiveness of the group contract. But here the defense asserts the validity of the group contract and seeks to have it applied according to its expressed and unequivocal terms.

Our conclusion is supported by the holding of the Supreme Court of Michigan in Rasmussen v. Equitable Life Assurance Society of the United States, 293 Mich. 482, 292 N.W. 377, 379. There a group insurance policy excluded from the defined class of covered employees those who had reached or passed their fortieth birthday. Though the particular employee was found to have reached his fortieth birthday prior to the effective date of the insurance, the defense on that score was held to be not one of invalidity, but one of coverage, and the incontestable clause in the group contract was held not to bar the defense. The Court said in that case:

"The understatement of age where the ambit of the group policy is expressly limited to a given age class does not come within the protection of the incontestability provision, any more than the misstatement that one is an employee when in truth he is a stranger to the group to be covered. * * * This is not a case where the company is contesting its contract. It is insisting that the contract is complete and incontestable, and that by its very terms plaintiff's decedent, because of his age, was not entitled to its benefits."

The Appellate Court for the Ninth District of Ohio in Aetna Life Insurance Co. v. Hooper, 1935, 19 Ohio Law Abst., 123, reached a similar conclusion saying:

"The evidence disclosed by the record herein fails to show that the plaintiff was at any time one of those persons within the class entitled to the benefit of the contract between the employer and the defendant; and until such showing, he had no enforceable rights under the policy in question, and the policy provision with reference to its being incontestable did not come into operation."

We do not understand the decision, without opinion, of the New York Court of Appeals in Eagon v. Union Labor Life Insurance Co., 3 N.Y.2d 785, 164 N.Y.S.2d 37, to require a conclusion that under the law of New York the question of membership in the defined class should be treated as one of validity rather than of coverage. In that case suit was filed by the named beneficiary of a certificate holder under a group insurance contract limited by its terms to members of a union. The plaintiff's decedent was not at the time of the effective date of the policy, nor thereafter, a member of the union. The policy in that case had been issued to the union and while it had never certified to the insurance company that the plaintiff's decedent was a member of the union, premiums were paid and accepted on his behalf. The briefs and record in that case indicate that the primary contention of the plaintiff was

that the insurance company was shown by its own records to have been informed of the situation and, thereafter, continued, until his death several years later, to accept the plaintiff's decedent as one of the persons whose lives were covered by the policy.

Suit in the Eagon case was initially instituted in the Municipal Court for the Borough of Manhattan which entered a judgment for the beneficiary. The judgment was affirmed by the Appellate Term of the Supreme Court, one justice dissenting. On appeal to the Appellate Division, the judgment was again affirmed, one justice dissenting. 2 A.D.2d 843, 156 N.Y.S.2d 57. While the dissenting opinion in the Appellate Division deals entirely with the principle that the incontestable clause does not bar the defense that the plaintiff's decedent was not within the insured class, making no reference to the elements of estoppel which were urged by the plaintiff as a ground for recovery nor to the fact that the incontestable clause in the Eagon case contained language which the majority might have construed to have been specifically intended to prohibit the questioning of the status of a certificate holder after one year, we cannot assume that the majority in the Appellate Division, in affirming, without opinion, the judgment below, were rejecting the reasoning of the dissenting justice and were not affirming the judgment upon the other grounds urged. When the Court of Appeals affirmed the judgment of the Appellate Division, again without opinion, its action must be taken as an approval of the result, but cannot be construed to be a rejection of the reasoning upon the one point considered by the dissenting justice below when there were other grounds urged in support of the judgment. See L. N. Jackson & Co., Inc., v. Lorentzen, D.C.S.D.N.Y., 83 F.Supp. 486. Indeed, it would be supposed that had the New York Court of Appeals intended to modify the basic principle so clearly stated by Chief Judge Cardozo in Metropolitan Life Insurance Co. v. Conway, 252 N.Y. 449, 169 N.E. 642, or to sub- stantially restrict the application of the principle of that case, it would not have affirmed the judgment below without opinion. But if we are permitted to consider the action of the New York Court of Appeals in affirming the judgment, without opinion, as approval of the result only and not of the legal reasoning of a lower court, we cannot speculate that it was intended as a rejection of the reasoning of the dissenting justice below or a departure from the principle of the Conway case as applied to the coverage of group life insurance contracts.

In John Hancock Mutual Life Insurance Co. of Boston, Mass. v. Dorman, 9 Cir., 108 F.2d 220, it appears that the group insurer contested the claim of a widow of a director upon the ground that he was not an employee within the meaning of the group insurance contract because he served without compensation. The Court rejected the basic contention, holding that the director was an employee and was within the coverage of the contract. It proceeded, however, to discuss the effect of the incontestable clause indicating that under the law of California the incontestable clause would bar the defense that the individual was not an employee at the inception of the policy, but would not bar the defense that he was not an employee within the meaning of the insurance contract at the time of his death. However, having found that the particular individual was in fact an employee within the coverage of the policy, what it said of the incontestable clause under the laws of California was unnecessary to its decision and does not modify our view of the laws of New York.

■ Bearing in mind the fundamental purpose of the parties to provide life insurance for employees actively engaged in pursuing their occupations as such and to avoid extending the coverage of the insurance to strangers to that defined employment relationship, we conclude that the incontestable clause in the language used here does not foreclose the defense that a particular individual was a stranger to the defined employment

relationship and was not within the coverage of the policy at the time of the effective date of the master policy or thereafter.

We have given consideration to the statutes of the State of New York controlling group insurance contracts and prescribing certain required conditions which must be met by their terms. The provisions of the group insurance contract in question here fully comply with the requirements of the New York statutes, however, and nothing has been found in those statutes which affects our construction of the language of the policy.

The judgment of the District Court is affirmed.