Henry M. APPERSON, Appellant,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.

No. 20043.

United States Court of Appeals Fifth Circuit.

June 7, 1963.

A. M. Edwards, Jr., Prather & Prather, West Point, Miss., for appellant.

J. A. Covington, Meridian, Miss., Charles H. McCraine, Jr., Houston, Miss., for appellee.

Before PHILLIPS,* WISDOM and GEWIN, Circuit Judges.

* Of the Tenth Circuit, sitting by designation.

PHILLIPS, Circuit Judge.

The United States Fidelity and Guaranty Company[1] brought this action against Apperson, seeking a declaratory judgment adjudging that an automobile liability policy issued by it to Apperson was void ab initio. From a judgment so declaring, Apperson has appealed.

On May 5, 1961, Apperson applied to Kyle Chandler, Jr., an underwriting agent of the insurer at West Point, Mississippi, for a policy of liability insurance on his Dodge automobile. The agent propounded certain questions in a written questionnaire to Apperson and correctly recorded his answers in the appropriate spaces in such questionnaire. Questions No. 8 and 9 in the questionnaire read.

"8. Has any company cancelled, declined, or refused renewal?

"9. Has any driver had license revoked or suspended?"

Apperson answered both questions in the negative. Both answers were knowingly false.

The agent also took from Apperson a written application. He propounded certain questions in such application to Apperson and correctly recorded therein his answers thereto. Apperson also signed such application. Among the questions set forth in the written application was one numbered 4, which read:

"4. Statement of Accidents. Has the applicant or any person named in (2) been involved in an automobile accident while operating any private passenger type automobile, resulting in damage to any property, including his own, or in bodily injury or death during the preceding 36 months?"

To Question 4 Apperson answered in the negative. Such answer was also knowingly false. The policy was issued to Apperson about May 7, 1961.

On March 9, 1960, The Employers Insurance Company of Alabama received from its agent in Gadsden, Alabama, a data report on a policy of automobile liability insurance issued by such agent to Apperson. On receipt of such report, Employers ordered its customary investigation report on new business. Such report was received and showed that Apperson did not meet Employers' underwriting requirements. On March 16, 1960, it mailed to Apperson a written notice of cancellation of the policy, effective March 26, 1960, addressed to him at 112 Sunnydale Drive, Gadsden, Alabama, which was then his correct post office address.

On October 18, 1958, Apperson was involved in an automobile accident, which resulted in property damage to an automobile driven by R. C. Wilson. Apperson made a written report of the accident to the State of Alabama. He did not have an automobile liability policy in effect on the date of such accident. The report was received on November 10, 1958, by the Department of Public Safety of Alabama. On December 15, 1958, such Department mailed to Apperson at 112 Sunnydale Drive, Gadsden, Alabama, his then post office address, a notice directing him to deposit with such Department $700.91, as security to satisfy any judgment or judgments for damages resulting from the accident and ordering him, in the event he failed so to do, to surrender to it his registration certificate, license plates and driver's license, on or before December 26, 1958, stated in the notice to be the effective date of their suspension. Such notice was duly received by Apperson. He did not make the deposit. Thereafter, such Department issued its order to its investigating officer to pick up Apperson's driver's license, registration certificate and license plates. On November 25, 1959, Apperson was convicted of running a stop sign in Franklin County, Alabama. On August 8, 1960, he was convicted of driving in excess of the lawful speed limit in the State of Mississippi. On August 27, 1960, he was convicted of driving without a driver's license in the State of Mississippi.

---

[1]. Hereinafter called the insurer.

Apperson moved from 112 Sunnydale Drive, Gadsden, Alabama, to West Point, Mississippi, about June 30, 1959. He did not renew his driver's license in Alabama, which had been suspended, nor did he at any time obtain a driver's license in the State of Mississippi.

About May 12, 1961, the insurer obtained a written report on Apperson from the Retail Credit Company. The report stated that files from his former address at Gadsden, Alabama, showed two judgments against Apperson, aggregating $10,379.38, "not marked satisfied" and a Federal tax lien for $19,827.18 "not satisfied." It further stated that Apperson's driver's license was revoked for failure to post security for an accident on October 18, 1958, and that "We learn of no other violations or accidents." The report further stated that Apperson was married and lived with his wife and three children in a good residential section; that they owned a second car which his wife drove; that she was a high school teacher; and that Apperson did not drink excessively, was in good health and "is considered capable and experienced with good driving reputation" and, except as stated above, the report was otherwise favorable to Apperson.

On receipt of such report from the Retail Credit Company, the insurer directed its special agent, George Coleman, to call on Chandler and have him check with Apperson with respect to the truth of his answers in the questionnaire and application. Coleman so instructed Chandler. Apperson's work, as the representative of a printing company, required him to travel in the States of Alabama, Tennessee, Mississippi and Arkansas and his work took him away from West Point for periods as long as two or three months. A considerable period of time elapsed before Chandler was able to contact Apperson. Finally he did contact Apperson, but the record does not disclose the exact date. Chandler asked Apperson if he had been in an automobile accident within the last three years and said the insurer had a report "saying that he had been." Apperson assured Chandler he had not

been in an accident within that time. Chandler further inquired of Apperson respecting cancellation of his driver's license and Apperson replied that he had an Alabama license that he was going to renew in Mississippi. Chandler also asked Apperson if any insurance company had cancelled a policy which it had issued to him and Apperson stated "he had not had any cancellations." Chandler reported to the insurer the facts with respect to the conversations referred to above.

On September 25, 1961, Apperson, while driving the Dodge automobile covered by the policy, was involved in a collision with a pickup truck on Highway 82 near Waldo, Arkansas. One occupant of the truck was killed and another, James V. Bannister, was injured. Apperson also suffered severe injuries.

Following such accident, the insurer's claims department for the State of Mississippi received from the insurer's El Dorado, Arkansas, office an inquiry respecting coverage of Apperson's automobile. After examining the file, the assistant superintendent of the claims department decided to get a statement from Apperson, and on October 5, 1961, the insurer's agent, Brewer, obtained a written statement from Apperson, signed by him. In it, Apperson stated that he was involved in the accident of October 18, 1958; that at that time he did not have automobile liability insurance; that he received the notice from the Alabama Department of Public Safety, referred to above; that he did not have a driver's license at the time the statement was made; that he formerly had an Alabama driver's license, but that it had expired and he did not know the exact date; that he moved to West Point, Mississippi, from Gadsden, Alabama, about June 30, 1959, and that he had never obtained a driver's license in Mississippi. Thereupon, the insurer caused the records in the Department of Public Safety to be checked and discovered Apperson's report of the accident of October 18, 1958; the direction to Apperson to deposit security to satisfy any judgment or judgments

resulting from such accident; the order that if he failed so to do, his driver's license would be suspended, effective December 26, 1958; the order to surrender such driver's license on or before that date; a record of traffic violations by Apperson; and the order issued by the Department of Public Safety to its investigating officer to pick up Apperson's driver's license. On November 6, 1961, the insurer sent to Apperson by registered mail at his correct post office address in West Point, Mississippi, a letter stating that he had made the false statements in the three particulars set out above and that for that reason the insurer had cancelled his policy and returned the full premium paid by him therewith. Apperson acknowledged receipt of the letter by a card dated 11/9/61, which he signed and which was returned to the insurer.

Bannister brought an action in the United States District Court for the Western District of Arkansas against Apperson, seeking damages for injuries suffered in the automobile accident of September 25, 1961, in the amount of $25,000.

Apperson claimed that the policy remained in force and covered any liability on his part, growing out of such accident. The insurer claimed that the policy was void from the beginning, because of false and material representations of fact.

■ It is a general rule that the intentional misrepresentation, by the applicant for an insurance policy, of a material fact, if relied on by the insurer, is ground for rescission of the policy by giving notice that the policy is cancelled and tendering refund of the premium paid.[2]

■ The mere fact that the insurer makes an independent investigation in order to test the truth of the representations made by the applicant does not absolve the applicant from telling the truth nor lessen the right of the insurer to rely upon his representations,[3] unless the investigation either discloses the falsity of the representations or discloses facts which would put a prudent person on further inquiry.[4]

■ If the investigation discloses facts which would put a prudent man on inquiry and such an inquiry, made with reasonable diligence, would have disclosed the falsity of the statements made by the applicant in the application for the insurance, then the insurer is equitably estopped from asserting such false statements as a ground for cancelling the policy.[5]

■ The evidence clearly established that Apperson wilfully made false statements of material facts in his answers to the questionnaire and in his application for the policy. The crucial question is,

2. Christian v. State Farm Mutual Automobile Ins. Co., 144 W.Va. 746, 110 S.E. 2d 845, 849; Pittman v. West American Insurance Company, 8 Cir., 299 F.2d 405, 411; Mayflower Insurance Exchange v. Gilmont, 9 Cir., 280 F.2d 13, 16; Safeco Insurance Company of America v. Gonacha, 142 Colo. 170, 350 P.2d 189, 191; Loving v. Allstate Insurance Company, 17 Ill.App.2d 230, 149 N.E.2d 641, 644; Allstate Ins. Co. v. Miller, 96 Cal. App.2d 778, 216 P.2d 565, 567; New York Life Ins. Co. v. Price, 5 Cir., 16 F.2d 660, 661; Fidelity Mut. Life Ins. Co. v. Miazza, 93 Miss. 18, 46 So. 817, 819; 7 Appleman, Insurance Law and Practice, § 4252, pp. 7, 8.

3. New York Life Insurance Company v. Strudel, 5 Cir., 243 F.2d 90, 93, 94; Gallagher v. New England Mutual Life Insur-

ance Co., 33 N.J.Super. 128, 109 A.2d 457, 460, 461; New York Life Ins. Co. v. Zavitz, 243 Ala. 379, 10 So.2d 276, 279, 143 A.L.R. 321; Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307, 310; John Hancock Mut. Life Ins. Co. v. Cronin, 139 N.J.Eq. 392, 51 A.2d 2, 5, 169 A.L.R. 355; Provident Life & Accident Ins. Co. v. Hawley, 4 Cir., 123 F.2d 479, 482, 483; Note: 169 A.L.R. 361, et seq.

4. John Hancock Mut. Life Ins. Co. v. Cronin, 139 N.J.Eq. 392, 51 A.2d 2, 5, 169 A.L.R. 355; Note: 169 A.L.R. 362, et seq. Also, cases cited in Note 3.

5. Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 116 F.2d 705, 707, c. d. 313 U.S. 561; Gouldin v. Inter-Ocean Insurance Company, 248 N.C. 161, 102 S.E.2d 846, 849; 16 Appleman, Insurance Law and Practice, § 9255, p. 817.

did the insurer actually and rightfully rely on the misrepresentations made by Apperson?

The obtaining of a report, such as the retail credit report in the instant case, conforms to a general practice followed by insurance companies.[6]

Here, the report of the Retail Credit Company was not based upon official records in the Alabama Department of Public Safety, but on information obtained by inquiry at the former place of residence of Apperson and was hearsay in character. While, in general, the report was favorable to Apperson, as indicated above, the statement respecting the accident of October 18, 1958, and the failure of Apperson to deposit security, although clearly insufficient to warrant cancellation of the policy by the insurer, gave it concern. It could have made a further independent investigation. It chose, however, to make further inquiry of Apperson. Accordingly, it instructed one of its special agents to direct Chandler, who had taken the application from Apperson and had recommended the risk, to contact Apperson and make further inquiry with respect to the representations made by him in answer to the questionnaire and in his application.

Because of Apperson's absence from West Point and some indisposition on the part of Chandler, considerable time elapsed before Chandler was able to contact and question Apperson with respect to the representations. However, he finally was able to make further inquiry from Apperson. Chandler then knew that the insurer had a report showing Apperson had been in an automobile accident within the three-year period and so informed Apperson. Apperson assured Chandler that he had not been in an automobile accident within the three-year period and reaffirmed all of his previous false answers to the questionnaire and in the application and Chandler so reported such reaffirmance to the insurer. Thereafter, the insurer relied upon Apperson's representations, which he had reaffirmed, until October 5, 1961. It was not until after Apperson's accident in Arkansas in September, 1961, that the insurer's claims department in investigating such accident, because a claim had been made against the insurer, took a written statement from Apperson on October 5, 1961, in which Apperson made admissions showing that certain of the representations in the questionnaire and in his application were false. Thereupon, further investigation was made by the insurer of the records in the Department of Public Safety of Alabama and facts were discovered that afforded a firm ground for cancelling the policy. After such discovery, the insurer acted promptly by giving notice of cancellation to Apperson and tendering a refund of all of the premium which he had paid.

Under the facts presented on this record, we do not think it can be said that the trial court's conclusion that the insurer rightfully relied on the false representations of material facts made by Apperson was clearly erroneous. When Chandler made further inquiry of Apperson with respect to his answers in the questionnaire and application and further particularly called Apperson's attention to the fact that the insurer had a contrary report with respect to the representation that Apperson had not had an automobile accident within the 36-month period, Apperson expressly reaffirmed all of his previous false answers. His reaffirmance again became material representations upon which the insurer relied, and, we think, rightfully. Surely, Apperson is not in a position to complain that the insurer chose to make further inquiry of him, instead of an independent investigation, because of the statement in the report, which Apperson unequivocally told Chandler was untrue. Equitable estoppel is not a one-way street.

We do not need to decide in the instant case whether the facts disclosed to the insurer by the Retail Credit Company report would have put a prudent person on further inquiry. We think Apper-

6.   Provident Life & Accident Ins. Co. v. Hawley, 4 Cir., 123 F.2d 479, 483.

son's reaffirmance to Chandler of the answers made by him in response to the questions in the questionnaire and the application amounted to new representations of material facts, upon which the insurer was entitled to rely, and that under such circumstances it was not bound to make a further independent investigation until it learned the facts which came to it through the statement from Apperson, obtained by the claim department.

We conclude that the insurer had the right to rely and did rely upon Apperson's false representations of material facts until October 5, 1961, and thereafter acted with requisite promptness to take the necessary steps to rescind the policy.

Affirmed.