The **FIRST PENNSYLVANIA BANKING AND TRUST COMPANY, E. Marshall Nuckols, Jr., and Orville C. Dewey, Jr., Executors Under the Will of Orville C. Dewey, Deceased**

v.

The **UNITED STATES LIFE INSURANCE COMPANY IN the CITY OF NEW YORK,** Appellant.

No. 17610.

United States Court of Appeals, Third Circuit.

Argued April 8, 1969.

Decided Nov. 17, 1969.

Rehearing Denied Dec. 10, 1969.

Owen B. Rhoads, Dechert, Price & Rhoads, Philadelphia, Pa. (R. Neal Risley, Philadelphia, Pa., Peter J. Flanagan, New York City, on the brief), for appellant.

Walter R. Milbourne, Obermayer, Rebmann, Maxwell & Hippel, and Ralph B. Umsted, Philadelphia, Pa., for appellees.

Before KALODNER, GANEY and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This is an appeal from the granting of a motion by the plaintiffs for summary judgment entered by the court below. The pertinent pleadings are as follows: On August 26, 1966, the plaintiffs filed a complaint asking for a declaratory judgment on a group policy of life insurance, No. G–9955–L, covering some 14 employees of Dewey Brothers, Inc., an insurance firm in the city of Philadelphia, under which the plaintiffs claimed the sum of $20,000, alleging that all the terms and conditions of the group life insurance policy had been met and fully complied with. On November 9, 1966, an answer was filed by the defendant, The United States Life Insurance Company in the City of New York, wherein, *inter alia*, it was denied that Orville C. Dewey, plaintiffs' decedent, was an employee within the terms of the policy at the time of his death or at any relevant time, and that any amount was due under the policy as a result of Orville Dewey's death. The case was listed for trial and plaintiffs' and defendant's pretrial memoranda were filed, as well as plaintiffs' request for admissions of fact and the defendant's answer thereto. Plaintiffs, thereafter, on June 11, 1968, filed a motion for summary judgment and defendant filed affidavits in opposition to the plaintiffs' motion. On October 7, 1968, by order of the court below, summary judgment was granted in favor of the plaintiffs.

The relevant facts are as follows: Orville C. Dewey, on the date of his death, September 21, 1965, was a citizen of Pennsylvania, and the executors of his estate were The First Pennsylvania Banking and Trust Company, a corporation chartered under the laws of the State of Pennsylvania, and two Pennsylvania citizens. Application was made through John Dewey, President of the company, who was the official negotiator for the group, for a policy of group life insurance, to the defendant, United States Life Insurance Company in the City of New York, on October 31, 1960, wherein it was stated that there were 14 men to be included in the policy who were on full-time employment, among which was the decedent, Orville C. Dewey. This number could not be less than 10 for, under Group Policy, Pennsylvania Law 40 P.S. Sec. 532.2(3), it was so required. Upon receipt of the application, the names of those to be insured by the defendant were referred by it to the Retail Credit Company, an independent research bureau, for a report thereon. Pending receipt of a report from Retail Credit Company, the defendant wrote the President of Dewey Brothers as follows: "The application you signed indicated that you have fourteen employees who regularly work thirty hours a week or more for your firm. This being the case, your insurance plan was effective November 1, 1960. Of course, if this requirement were not met, the insurance would not have become effective." However, on November 10, 1960, the report received on Orville Dewey by the defendant, United States Life Insurance Company, recited as follows: "Orville C. Dewey is the assistant treasurer for the above Dewey Brothers incorporated a reputable insurance brokerage in this city. The business was founded in 1934 by the brother of the applicant. He is the assistant treasurer of the firm. He is also known to be employed by the United States government, the exact connection in this capacity is not known. He is well regarded." On November 16th, six days after its initial report, the Retail Credit Company gave the defendant the result of its interview with John Dewey, the President of Dewey Brothers

and a brother of Orville Dewey, in which it was stated that Orville Dewey worked forty hours per week, confirming the information in the application. Thereafter, the defendant-insurance company, on November 21, 1960, got a report saying that 3 of the 14 employees did not work full-time and, therefore, would not be included in the policy, but the plaintiffs'-decedent was not one of the three. Additionally, the report stated, "We have more detailed inspections on the other employees, in process, and shall notify you of the results as soon as they become available." In view of the report from the Retail Credit Company, the defendant-insurance company retained Dun & Bradstreet, another independent research bureau, to again interview and investigate Dewey Brothers. This interview was held on November 22, 1960 and the report said, with final assurance, that "all the officers worked a standard forty-hour week." During this interview with John Dewey, President of Dewey Brothers, he evidenced annoyance with the continued investigation concerning the employment of its officers, of which Orville Dewey was one. However, on December 7, 1960, as indicated, the defendant notified Dewey Brothers that the policy would be effective as of November 1, 1960. The policy eliminated the three individuals whom the Retail Credit Company found not working full-time and also provided exclusion from coverage of all persons who "do not regularly work at least thirty-hours per week as an employee of the employer." The policy also contained a one-year incontestability clause, in conformity with Pennsylvania Stat. 40 P.S. § 510(c), covering Group Policies, which reads as follows: "This policy shall be incontestable except for non-payment of premiums, as to insurance in force at the date hereof after two years after the date of issue of this contract, and as to insurance thereafter issued after one year from the time such insurance takes effect as herein provided."

On September 29, 1961, John Dewey, President of Dewey Brothers, was advised that they were below the ten persons requisite to be insured under the policy and was also advised that defendant-insurance company would cancel the policy unless the full complement required under the policy was restored. However, the policy was never canceled and the insurance was maintained in full effect as a list of 10 persons was submitted on November 1, 1961. On at least two occasions, on September 8, 1962, and again on October 20, 1965, the defendant's Group Service Manager, in writing, concerning the rate policy of the company, stated as follows: "We wish to take this opportunity to remind you that the group insurance coverage in force under your policy covers all eligible, full-time employees. A full-time employee is one who regularly works at least 30 hours each week as an employee of your firm."

As indicated, Orville Dewey died on September 21, 1965, and to the proof of claim submitted to the insurance company there was attached a death certificate showing his occupation with the Central Intelligence Agency, and this was the first knowledge the defendant had of his employment with the Agency. While the President, John Dewey, conceded that the beneficiary, Orville Dewey, was a permanent employee with the Federal government, with CIA, he also testified that he was away quite often from the office on numerous occasions, but the record is absent as to any type of work he was performing inasmuch as it contains nothing respecting the division of work which the decedent performed while away from the office, since he may well have been soliciting business, as well as doing some work for the CIA, which, it must be conceded, is a very confidential Government agency, whose employees are not permitted to disclose any of the aspects of their work. Furthermore, while it was conceded by the plaintiff that at times Orville Dewey's work was irregular, there is nothing in the record to show that, while he was a permanent employee of the CIA, he was working the full thirty hours a week for

the company, as, after being closely questioned about the regularity of his work, the President conceded that it was "hard to say."

The policy was delivered in the State of Pennsylvania, the place of residence of the insured, and, accordingly, Pennsylvania law governs its interpretation. Franklin Life Insurance Co. v. Bieniek, 312 F.2d 365, 367–368 (C.A.3, 1962).

Further, it is now well settled that a district court cannot grant summary judgment under F.R.Civ.P. 56(c), when there are unresolved "genuine issues of material fact." Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc., 365 F.2d 742 (C.A.3, 1966); Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114, 17 A.L.R.3d 998 (C.A.3, 1966). Summary judgment may not be granted under the federal rule if there be an issue presented as to existence of any material fact; and all doubts as to existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. Sarnoff v. Ciaglia, 165 F.2d 167 (3 Cir., 1947). Also, in ruling on a motion for summary judgment, the movant not only has the burden of demonstrating clearly the absence of any genuine issue of material fact, but the court should not draw factual inferences in favor of the moving party, and should not resolve a genuine issue of credibility. Moore's Federal Practice, ¶ 56.7(27) at 2215–2216.

Accordingly, the focal point of our inquiry is whether the district court, as a matter of law, can say that the plaintiffs were entitled to summary judgment on the issue we deem to be a factual one, as to whether the information disclosed to the defendant would put a reasonably prudent person on notice to elicit further inquiry additional to the steps taken here by the defendant.

The plaintiffs here raise two issues, one that the incontestability clause in

the policy of one year barred the defendant from asserting the defense that the decedent did not regularly work thirty hours per week, since he died on the 21st day of September, 1965, and the effective date of the policy was November 1, 1960; and the second issue that, assuming such a defense may be asserted, the defendant waived his right thereto, under the circumstances obtaining here, by accepting premiums under the policy down until the date of his death, to which we will later advert.

The objection to the first issue raised is that the plaintiffs did not file a cross-appeal here. This issue was decided against it in the court below, and the second issue of waiver was decided in its favor, and only the defendant appealed, although the matter was argued in the briefs of the plaintiffs filed on review. Aside from this, we affirm the judgment of the lower court that the incontestability clause in the policy did not bar the defendant from asserting a defense. As stated by Judge Haynsworth, in Fisher v. United States Life Insurance Co. in City of New York, 249 F.2d 879, 882 (C.A.4, 1957), "As the District Judge clearly pointed out in his opinion, it is well settled in general, and in New York whose laws govern our decision in this case, in particular, that the incontestable clause, after the passage of the stipulated period, proscribes defenses which go to the validity of the policy whether because of noncompliance with conditions or the falsity of representations or warranties. It was never intended to enlarge the coverage of the policy, to compel an insurance company to insure lives it never intended to cover or to accept risks or hazards clearly excluded by the terms of the policy." In so doing, the court cited with approval Chief Judge Cardozo, speaking for the New York Court of Appeals in Metropolitan Life Insurance Co. v. Conway, 252 N.Y. 449, 169 N.E. 642 (1930).[1] Although Simpson v. Phoenix Mutual Life

---

1. "The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to cov-

Insurance Co., 30 A.D.2d 265, 291 N.Y. S.2d 532 (1968), reaches a different conclusion, since there are no Pennsylvania decisions on this point, we are in agreement that if the precise point came before a Pennsylvania court it would follow the logic and reasoning of *Fisher*, supra. For, as pointed out, the court below concerns itself whether the decedent was covered by the policy, a matter of coverage, and does not go to the invalidity of the policy itself. Additionally, it is important, in construing the facts in this case, to note that the provision that all of the employees work regularly thirty hours per week is not a static situation, but one which has continuity to it, for, assuming that no question of waiver was involved, can it be seriously contended that after one year, if it came to the attention of the defendant for the first time that some of the group had been working only two hours a week, or had left the employ of the company, a month after the policy had become effective, the defendant could not cancel the policy, or if death ensued, it could not assert it as a defense? Additionally, if it came to the attention of the defendant any time after the one year period that any of the group were not working thirty hours a week, it would be most unrealistic to hold that the company could not cancel the policy as to such person or, in the event of death, assert it as a defense to a beneficiary's claim for, if it were otherwise, the defendant would be required to police every member of the group continually to see if they were working thirty hours a week. Obviously, the contract

provision itself vitiates any assertion here of the incontestability clause.

■ With respect to the second claim made by the plaintiff, that of waiver by the defendant, and the basis upon which the lower court rendered judgment on the motion for summary judgment, we reverse and hold that on this record there was no waiver on the part of the defendant company for, in our opinion, the question of whether or not a reasonably prudent person would be put on notice to elicit further information with respect to the employment of Orville Dewey was a question which should be submitted to a jury or to a judge as a finder of fact, as we find no basis for deciding this factual question, or any factual inference to be drawn from the circumstances here obtaining, as a matter of law.[2] The report of the Retail Credit Company, at best, disclosed no significant discrepancy as to Orville Dewey's employment. Further, it gave no clue as to Orville Dewey's not working thirty hours per week, since his employment may well have been on special assignments with the Central Intelligence Agency.

■ A review of the cases discloses that in order to constitute waiver, there must be sufficient knowledge disclosed to the insurer that there is some falsity in the statement by the insured or something of some significance which would put a reasonably prudent person on notice to make further inquiry. Union Insurance Exchange, Inc. v. Gaul, 393 F.2d 151 (C.A.7, 1968); Travelers Insurance Co. v. Eviston, 110 Ind.App. 143, 37 N.E.

---

erage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken."

2. Even if the information disclosed to the defendant as revealed at the further trial court proceedings required by this opinion would have put a reasonable person on notice to elicit further inquiry, the fact finder will then have to consider (1) what

such further inquiry should have involved if reasonably conducted, and (2) whether such a reasonably conducted inquiry would have revealed the limited extent of the employment of plaintiffs' decedent by Dewey Brothers, Inc. This record does not justify the assumption, apparently made by the district court, that a reasonable further investigation would necessarily have revealed that Orville Dewey did not in fact work thirty hours per week for Dewey Brothers, Inc. This record indicates that the extent of his work with the CIA was not easily ascertainable.

2d 310; Gallagher v. New England Mutual Life Insurance Co. of Boston, 19 N. J. 14, 114 A.2d 857, 862; 7 Couch on Insurance 2d, §§ 35:252, 35:254; 16 Appleman, Insurance Law and Practice, § 9086, pp. 618–619. The record is barren, in the instant case, of any other fact except that the insured was in the employ, also, of the United States Government. This fact, as we have indicated, did not preclude the insurer from assuming that the insured worked regularly thirty hours. In Warren v. Confederation Life Association, 401 F.2d 487, at 490 (C.A.1, 1968), in discussing the question of whether there was a waiver by the insured, it is stated as follows, footnote omitted: "Secondly, there may be questions of waiver. But cf. Lopardi v. John Hancock Mut. Life Ins. Co., Supra, [289 Mass. 492, 194 N.E. 706] n. 7. Even so we could not accept plaintiff's contention that because the company knew to some extent that the applicant was not in first class health it waived the provision in its entirety. The company cannot be regarded as waiving what it does not know. Cf. Niagara Fire Ins. Co. v. Lowell Trucking Corp., 1944, 316 Mass. 652, 56 N.E.2d 28. There can be no basis for the plaintiff to say that the company waived substantial circumstances of which it was ignorant.[8]" In Crawford v. Manhattan Life Insurance Co. of New York, 208 Pa.Super. 150, 221 A.2d 877 (1966), the insured had submitted to the defendant-company a report from another insurance company which showed that that company had declined his application for insurance. Upon receipt of his application, on August 20, 1956, the defendant submitted an amended form to the insured in answer to which he did not disclose that he had an electrocardiogram; that he had been placed on a low salt diet; or that he had been treated throughout the spring of 1956 by a doctor. The court there held that the inconsistency in the report which he had forwarded to the defendant-company of the previous insurance company (Northwestern), together with the amended statements submitted to the insured in order to secure insurance with it, did not serve to estop the defendant-company from relying on the false statements in the amended application and the answers relating to his previous hospitalization, of which he made no mention. Here, again, it is indicated that some knowledge by the insurance company of facts inconsistent with the terms of the policy does not always, in and of itself, preclude the defendant-company from asserting non-waiver under the policy. In Provident Life and Accident Insurance Co. v. Hawley, 123 F.2d 479 (4 Cir., 1941), a suit by the plaintiff for cancellation of a life insurance policy, a judgment rendered in the court below for the defendant was reversed. The lower court submitted to the jury three questions, two of which were: (2) that the Insurance Company waived the misrepresentations that the applicant had made; and (3) that the Insurance Company was indebted to the estate of the insured in the sum of $15,000. The court, on appeal, held that the crucial question was whether there was evidence to justify the findings of the jury and the judgment based thereon, which denied cancellation of the policy, and stated, at p. 482: "While the company knew, notwithstanding his statements to the contrary, he had consulted physicians in the ten years prior to his application, it had no knowledge that for years he had suffered from trichomonas infection, or that only a few days before his application he had been told by his physician at Hot Springs that he had a defective and abnormal heart. The conditions of an ordinary waiver were therefore not met." This is in conformity with our holding that there are not sufficient facts in the instant case for the court to decree a waiver, but it indicates strongly that the question of waiver is a question for the fact finder, since it was submitted to a jury and the appellate court held on review there was not enough evidence in the record to support a waiver.

In New York Life Insurance Co. v. Strudel, 243 F.2d 90 (C.A.5, 1957), the court stated, at p. 94: "The first question therefore is whether the appellant [New York Life Insurance Company] here knew the true facts, or at least had at any time obtained such knowledge about the facts that a consequent reasonable inquiry would have revealed them. At the trial the only evidence of such knowledge was the indication that appellant's Medical Director had some suspicion that the insured had had heart trouble, as indicated by the Director's communication to the company's Miami doctor. The nature of that knowledge was in no way established, and therefore we cannot say, nor *could the jury have found* except by unwarranted speculation, that that information called for any investigation beyond that which was carried out." (Emphasis ours.) Further, it was stated that, "Here there were no such ambiguities or inconsistencies in the application and the other records put into evidence as were present in Love v. Metropolitan Life Ins. Co., D.C.E.D.Pa., 99 F.Supp. 641, and as *would make the bona fides of the reliance on the application a jury question.* See Provident Life & Accident Ins. Co. v. Hawley, 4 Cir., 123 F.2d 479, and Jefferson Standard Life Ins. Co. v. Stevenson, 5 Cir., 70 F.2d 72, for cases in which insurer's knowledge of minor inconsistencies or falsehoods in the application were held not to bar reliance on representations which proved to be false." (Emphasis ours.) Here again, "the bona fides of the reliance" as to waiver is made a jury question.

In Apperson v. United States Fidelity and Guaranty Co., 318 F.2d 438 (C.A.5, 1963), which was an action by the insurer for a judgment declaring automobile liability policy void ab initio, the district court granted the requested relief and the insured appealed. On review, the court held that where the insurer, after issuing an automobile liability policy, had obtained a credit report indicating possible falsity of some of the insured's statements in the application and instead of making any further independent investigation, contacted the insured who reaffirmed the truth of the application's statements, the insurer rightly relied on such new representations and was not equitably estopped from asserting falsity of representations as a ground for cancelling the policy. In that case, there is a parallel with respect to corroboration of statements, and, in the instant case, the Retail Credit Company, after the statement that Orville Dewey was also employed by the United States Government, went to the President of the company who, as indicated, negotiated the contract and spoke for the Company, of which Orville Dewey was an officer, and the Retail Credit Company was again reassured that all of its officers were working at least a thirty hour week.

Columbian National Life Insurance Co. of Boston, Mass. v. Rodgers, 116 F. 2d 705 (10 Cir., 1941). is relied on as a case in opposition to views hereinabove stated, but, however, if we look at the facts in the case, Rodgers brought an action on a policy of life insurance issued by the defendant and a judgment was entered for the plaintiff and on appeal the judgment was affirmed. However, the court stated, at p. 708: "Information in possession of appellant prior to its issuance of the policy, that Paul W. Rodgers had applied to the John Hancock Company for a policy of insurance, which company had created a record against the applicant, was sufficient to put the insurer on inquiry as to the nature of the record, because the reporting service from which the information was obtained indicated that the applicant had either been declined or had been rated differently from the established rates, or that some other unusual circumstances were involved."[3] This is the type of case which shows that the ques-

---

3. This case was tried by the court without a jury. *Substantial evidence was submitted in support of the facts upon which an* *equitable estoppel was created.* The material findings and the judgment are fully supported by competent evidence.

tion of the existence of an estoppel by waiver is a factual one and not merely a question of law. We are in complete agreement with this holding as the footnote shows that evidence was submitted to the court sitting as a jury which supported an equitable estoppel.

For the reasons stated, the order and judgment of the district court entering judgment in the plaintiffs' favor will be reversed and the cause remanded for further action not inconsistent with this opinion.

KALODNER, Circuit Judge (dissenting).

I would affirm the District Court's Order entering judgment in plaintiffs' favor and against the defendant for the reason that in my view the District Court did not err in granting summary judgment against defendant in the light of the undisputed facts established by defendant's own proofs.

This appeal is from the District Court's entry of summary judgment against the defendant life insurance company in a declaratory judgment action instituted by the plaintiffs, trustees under the will of Orville C. Dewey, Jr., deceased, to recover proceeds of a Certificate of Insurance issued by the defendant to Orville C. Dewey, Jr. under its group life insurance policy covering employees of Dewey's employer, Dewey Brothers, Inc., an insurance brokerage company.

Defendant below denied plaintiffs' claim on the ground that Orville C. Dewey, Jr. was not a qualified member of the group of employees covered by its policy in that he did not "regularly work at least thirty hours per week as an employee" of Dewey Brothers, Inc. as required by the group life insurance policy.

The District Court, in an Opinion accompanying its Order granting plain-

tiffs' motion for summary judgment, held that defendant had by its conduct "waived" its asserted defense.

On this appeal, defendant contends that the District Court erred in granting summary judgment because the "waiver" issue presented "genuine" issues of material fact" requiring jury determination.

The record below, via various Exhibits; "Defendant's Answers to Plaintiffs' Requests for Admissions"; and the deposition of Gary C. Greis, supervisor of defendant's group claim department, establishes these undisputed facts:

On November 2, 1960, defendant received an application for group insurance, dated October 31, 1960, signed by John Dewey, as President of Dewey Brothers, Inc. ("Dewey"). The application proposed coverage for fourteen individuals who were stated to be full-time employees of Dewey. It was accompanied by a Memorandum [1] in which Dewey supplied the names of the fourteen employees. Alongside the name of Orville C. Dewey there was a notation "Covered by Government Service Health & Accident." Defendant contracted with the Retail Credit Company ("Retail Credit") to investigate and to determine the type of risks involved in the employee group, and in addition to verify the statement in the application that the employees did work full time. Retail Credit thereafter made a series of "Reports" to defendant with respect to its investigation in which they advised, *inter alia*, that (1) three of the fourteen employees proposed for group coverage, viz., Paul C. Dewey, Daniel Dewey and Nelson G. Dewey, were not full-time employees of Dewey; (2) Charles Denby was "part-time" secretary of Dewey, and "he is also an attorney self-employed" and "[h]e will put in anywhere from 15 to 40 hours a week for the firm [Dewey] as needed"; [2] and (3) "Orville C.

---

1. Plaintiffs Exhibit No. P 7.

2. In a further report on Denby, it was stated: "Charles Denby in addition to being secretary of Dewey Brothers is an

attorney in the firm of Reed, Smith, Shaw and McClay [a prominent Pittsburgh, Pa. law firm] and has been during the time known."

Dewey is the assistant treasurer of Dewey and [h]e is also known to be employed by the United States government, the exact connection in this capacity is not known."

Since the Retail Credit reports were in part inconsistent with the initial application for the group insurance policy, defendant retained Dun & Bradstreet, Inc., nationally known credit agency, to interview John Dewey, president of Dewey, in order to clarify the nature of the employment relationship between Dewey and those proposed for group insurance coverage. In the interview which ensued, according to Paragraph 10 of "Defendant's Answers to Requests for Admissions", John Dewey advised Dun & Bradstreet's representative that "the office employees and clerks worked * * * a total of 35 hours per week and that the corporation's officers worked 40 hours per week." The Dun & Bradstreet report to defendant of its interview listed both Denby and the deceased Dewey as working 40 hours a week. After receiving this report defendant advised Dewey on December 7, 1960, that its application for a group insurance policy had been approved and that it would be issued effective November 1, 1960. The policy was issued December 13, 1960, and a Certificate of Insurance thereunder in the amount of $20,000 was delivered to Orville Dewey.

The premiums paid to defendant for Orville's coverage until his death on September 25, 1965 amounted to $3657.91. Total premiums paid for the group coverage during the stated period amounted to some $30,000.

The policy contained a provision which stated that it excluded coverage of all persons who "* * * do not regularly work at least thirty hours per week as an employee of the Employer."

The policy further contained a one-year incontestability clause compatible with Pennsylvania statutory requirements.

As earlier stated, the District Court ruled that in the light of the above undisputed facts defendant had "waived" compliance with the minimum 30-hour per week employment provision of the policy.

In doing so it said in relevant part:

"The plaintiffs' second contention[3] is that the defendant is estopped or has waived any defenses that it may have upon the policy. The law of Pennsylvania, which controls this case, is that acceptance of premiums with knowledge of facts inconsistent with statements in an application may constitute waiver of a defense based upon such statements. Knowledge which is sufficient to lead a prudent person to inquire about a matter will be regard-

---

**3.** The plaintiffs' first contention was that the incontestability clause of the policy acted as a bar to any defense that defendant could make. The District Court rejected that contention on the authority of Fisher v. United States Life Ins. Co., 249 F.2d 879 (4 Cir. 1957). It was there held that under applicable New York law the incontestability provision of a policy did not foreclose a defense premised on the ineligibility of the insured under the policy's terms.

Subsequent to the District Court's decision in the instant case, the Court of Appeals of New York in Simpson v. Phoenix Mutual Life Insurance Company, 24 N.Y.2d 262, 266, 299 N.Y.S.2d 835, 838–839 (1969), held that " * * * employment, as defined in this group policy, is a condition of insurance and, therefore, since the insurer did not con-

test the employee's eligibility within the period of contestability, it is barred from raising it, as a defense to the beneficiary's action (Eagon v. Union Labor Life Ins. Co., 3 N.Y.S.2d 785, 164 N.Y.S.2d 37, 143 N.E.2d 793).

"Our courts in the past have stringently enforced the incontestable provision required by statute to be included in every group and individual life insurance policy because of the important purposes which it is intended to serve. The provision safeguards an insured from excessive litigation many years after a policy has already been in force and assures him security in financial planning for his family, while providing an insurer a reasonable opportunity to investigate. * * *" [footnote omitted].

ed as knowledge of a fact which inquiry would have revealed. Columbia Nat. Ins. Co of Boston, Mass. v. Rodgers, 116 F.2d 705 (10th Cir. 1940); Franklin Life Ins. Co. v. Bieniek, 312 F.2d 365 (3d Cir.1962).

"In the present case, the defendant had been advised by its investigating agency that Orville Dewey, in addition to his position with Dewey Brothers, held a job (not specified) with the U. S. Government. With this knowledge before it the defendant issued its policy covering Orville Dewey and collected premiums for nearly five years.

"Knowledge of the part-time character of Orville's employment with his company was sufficient to put the insurer on inquiry. By such inquiry, the defendant would have ascertained that Orville was employed by the Central Intelligence Agency in a full-time capacity. These facts in my opinion are sufficient to hold that the defendant, by its acceptance of premiums on the policy, waived its defense."

As earlier stated, I am of the opinion that the District Court did not err in granting summary judgment against defendant in the light of the undisputed facts established by defendant's own proofs, above recited.

Pennsylvania law controls in the instant case since the group life insurance policy and the Certificate of Insurance thereunder were delivered in Pennsylvania.[4]

Under Pennsylvania law, where an independent investigation by an insurance company discloses facts "sufficient to expose the falsity of the representations of the applicant *or to put the insurance company upon further inquiry*", the insurance company is estopped from asserting the right to rely upon representations made by the applicant. Crawford v. Manhattan Life Insurance Company of New York, 208 Pa.Super. 150, 221 A.2d 877 (1966). It was there said (pp. 166–167, 221 A.2d at p. 886):

"We agree with the statement in 7 Couch, Insurance 2d, § 35:84 (1961), that, 'It is a general and salutary custom of life insurance companies, however, in the interest of their policyholders as well as themselves, to obtain through various channels information in respect to applicants for life insurance additional to that which the applicants themselves afford, and it would be unreasonable to hold that such an independent investigation of itself deprives an insurer of the right to rely upon representations made by an applicant. To have this effect, the investigation must disclose facts sufficient to expose the falsity of the representations of the applicant *or to put the insurer upon further inquiry.*' See also Apperson v. United States Fidelity and Guaranty Company, 318 F. 2d 438 (5th Cir.1963), and cases cited therein, and 169 A.L.R. 361." (emphasis supplied).

In *Apperson*, above cited, the court said at page 441:

"The mere fact that the insurer makes an independent investigation in order to test the truth of the representations made by the applicant does not absolve the applicant from telling the truth nor lessen the right of the insurer to rely upon his representations, *unless the investigation* either discloses the falsity of the representations or *discloses facts which would put a prudent person on further inquiry.*

"*If the investigation discloses facts which would put a prudent man on inquiry and such an inquiry made with reasonable diligence, would have disclosed the falsity of the statements made by the applicant in the application for the insurance, then the insurer is equitably estopped from asserting such false statements as a ground for cancelling the policy.*" (footnotes omitted; emphasis supplied).

In the leading case of Columbian Nat. Life Ins. Co. of Boston, Mass. v. Rodg-

4. Franklin Life Insurance Company v. Bieniek, 312 F.2d 365, 367–368 (3 Cir. 1962).

ers, 116 F.2d 705 (10 Cir. 1940), cert. den. 313 U.S. 561, 61 S.Ct. 838, 85 L.Ed. 1521 (1941), cited in *Apperson,* the Court said (p. 707) :

> "Knowledge which is sufficient to lead a prudent person to inquire about the matter, when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed, and *will be regarded as knowledge of the facts.*" (citations omitted; emphasis supplied).

We quoted with approval the *Columbian* rule in Franklin Life Insurance Company v. Bieniek, 312 F.2d 365, 375 (1962), in declaring that once an insurance company is put to the duty of making further inquiry and fails to do so, it must "be held bound by the knowledge such inquiry would have disclosed." We further noted in *Franklin,* with respect to the *Columbian* rule, that "Such a rule is accepted in Pennsylvania, Ratkovic v. Metro. Life Ins. Co., 126 Pa.Super. 492, 191 A. 201 (1937), and other jurisdictions."

Applying the principles stated in the foregoing cases to the instant case, it is clear that the undisputed facts established that defendant had "waived", and was thereby estopped from asserting, the defense that Orville Dewey was not covered by Dewey's group insurance policy because he did not "regularly work at least thirty hours per week as an employee."

The undisputed facts disclose that the Retail Credit investigation reports advised defendant that (1) Orville C. Dewey *"is also known to be employed by the United States government, the exact connection in this capacity is not known";* (2) Charles Denby was "part-time" secretary of Dewey, and "he is also an attorney self-employed" and "[h]e will put in anywhere from 15 to 40 hours a week for him [Dewey] as needed"; and (3) three of the fourteen employees proposed for group coverage

were not full-time employees of Dewey, as represented in Dewey's application.

These Retail Credit reports put defendant on notice that Dewey's representations in its group policy application that all of its employees and officers worked from 35 to 40 hours per week were not to be accepted at face value. They particularly put defendant on notice that Orville Dewey, in addition to his Dewey employment was in the employ of the United States. That fact, standing alone, "would put a prudent person upon further inquiry", and it reasonably imposed upon defendant the duty to check directly with Orville Dewey as to the number of hours he worked for Dewey. Since defendant did not discharge the stated duty it was charged with knowledge of the conceded fact that Orville worked less than 30 hours per week for Dewey. That being so, defendant "waived", as to Orville, the policy requirement as to a 30-hour per week employment by Dewey, and the waiver estops defendant from its asserted defense of Orville's failure to meet the policy requirement.

What has been said, brings us to defendant's contention on this appeal that entry of summary judgment was precluded in the instant case by reason of existence of "genuine issues" of material facts.

These "genuine issues" as to "material facts" are stated to be (1) whether the defendant's "Retail Credit reports would cause a reasonable insurer to investigate further"; (2) "whether the subsequent investigation actually performed by the defendant was reasonable under the circumstances" and (3) "the liklihood that any investigation would have disclosed Orville C. Dewey's activities in behalf of the C.I.A."

The short answer to these asserted "genuine issues" as to "material facts" is that under defendant's own proof[5] they are little short of specious.

---

5. Defendant's Answers to Plaintiffs' Request for Admissions; Deposition of Gary

C. Greis, supervisor of defendant's group claims department, and its Exhibits.

These principles as well-settled[6] with respect to the application and sweep of Rule 56, F.R.Civ.P.:

The purpose and function of the summary judgment Rule is to expeditiously determine and dispose of cases when there is no genuine issue of a material fact to be decided.

Pleadings, affidavits, depositions, answers to interrogatories and requests for admissions are to be considered by a court in determining whether there is a bona fide dispute as to a material fact and neither conclusionary allegations nor general denials standing alone create an issue of fact.

Summary judgment must be granted when a court is convinced that reasonable men could not differ as to the facts. Lopez v. Denver & Rio Grande Western Railroad Company, 277 F.2d 830, 832 (10 Cir.1960).

The summary judgment granted by the District Court abundantly satisfied the requirements of the stated principles.

---

6. Kern v. Tri-State Insurance Company, 386 F.2d 754, 756 (8 Cir. 1968); H. B. Zachry Company v. O'Brien, 378 F.2d 423, 424–425–426 (10 Cir. 1967); Fitzgerald v. Westland Marine Corporation, 369 F.2d 499, 500 (2 Cir. 1966).